# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

ESAD HASANAGIC,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

        Defendant.

No. C09-2066

RULING ON JUDICIAL REVIEW

_____

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   *Hasanagic's Education and Employment Background.* . . . . . . . . . . 5
     B.   *The First Administrative Hearing.* . . . . . . . . . . . . . . . . . . . . . . . 5
          *1.*   *Hasanagic's Testimony.* . . . . . . . . . . . . . . . . . . . . . . . 5
          *2.*   *Vocational Expert's Testimony.* . . . . . . . . . . . . . . . . . . . 7
     C.   *The Second Administrative Hearing.* . . . . . . . . . . . . . . . . . . . . 7
          *1.*   *Hasanagic's Testimony.* . . . . . . . . . . . . . . . . . . . . . . . 7
          *2.*   *Vocational Expert's Testimony.* . . . . . . . . . . . . . . . . . . . 8
     D.   *Hasanagic's Medical History.* . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     A.   *ALJ's Disability Determination.* . . . . . . . . . . . . . . . . . . . . . . . 15
     B.   *Objections Raised By Claimant.* . . . . . . . . . . . . . . . . . . . . . . . 17
          *1.*   *Substantial Gainful Activity.* . . . . . . . . . . . . . . . . . . . . 17
          *2.*   *Douglas' Opinions.* . . . . . . . . . . . . . . . . . . . . . . . . . 20
          *3.*   *Evaluation of Mental Impairments.* . . . . . . . . . . . . . . . . 22
          *4.*   *Fully and Fairly Developed Record.* . . . . . . . . . . . . . . . . 24

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VII.  **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Esad Hasanagic on December 14, 2009, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits. Hasanagic asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, Hasanagic requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On June 17, 2003, Hasanagic applied for SSI benefits.[1] In his application, Hasanagic alleged an inability to work since August 15, 2000 due to back problems. Hasanagic's application was denied on October 7, 2003. On February 10, 2004, his application was denied on reconsideration. On March 4, 2004, Hasanagic requested an administrative hearing before an Administrative Law Judge ("ALJ"). On February 10, 2006, Hasanagic appeared via video conference with his attorney before ALJ Denzel R. Busick for an administrative hearing. Hasanagic and vocational expert Julie Svec testified at the hearing. In a decision dated August 20, 2006, the ALJ denied Hasanagic's claim. The ALJ determined that Hasanagic was not disabled and not entitled to SSI benefits because he was functionally capable of performing his past relevant work as a gambling dealer. Hasanagic appealed the ALJ's decision. On November 20, 2006, the Appeals Council remanded Hasanagic's claim to the ALJ for further consideration.

---

[1] Prior to his 2003 application, Hasanagic applied for SSI benefits on September 19, 2000, May 31, 2001, and December 20, 2001. Each of these applications were denied on December 4, 2000, August 8, 2001, and March 5, 2002, respectively. It appears that Hasanagic only requested reconsideration of the initial denial of his December 20, 2001 application. That application was denied on reconsideration on September 23, 2002. It also appears that Hasanagic requested no further review of the September 2002 denial of benefits.

On March 23, 2007, Hasanagic appeared via video conference with his attorney before ALJ Denzel R. Busick for a second administrative hearing. Hasanagic and vocational expert Vanessa May testified at the hearing. In a decision dated August 28, 2007, the ALJ denied Hasanagic's claim on remand. The ALJ determined that Hasanagic was not disabled and not entitled to SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Hasanagic appealed the ALJ's second decision. On October 8, 2009, the Appeals Council denied Hasanagic's request for review. Consequently, the ALJ's August 28, 2007 decision was adopted as the Commissioner's final decision.

On December 14, 2009, Hasanagic filed this action for judicial review. The Commissioner filed an Answer on June 16, 2010. On July 19, 2010, Hasanagic filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On September 13, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On May 20, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by 'substantial evidence on the record as a whole.'" *Heino v. Astrue*, 578 F.3d 873, 878 (8th Cir. 2009) (quoting

*Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole."

*Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Hasanagic's Education and Employment Background

Hasanagic was born in 1963. He completed the twelfth grade in Zagreb, Croatia. He stated that his math skills were "not that bad. I can add, subtract, metric system or inches. It doesn't matter."[2]

The record contains a detailed earnings report for Hasanagic. The report covers Hasanagic's employment history from 1990 to 2006. According the report, Hasanagic's first reported earnings were in 1997, and he earned $5,895.52. He had no earnings in 1998. From 1999 to 2001, Hasanagic earned between $178.88 (2001) and $8,797.36 (1999). He had no earnings in 2002. In 2003 and 2004, he earned $1,250.87 and $5,051.37 respectively. In 2005, Hasanagic earned $20,880.33. He has no earning since 2006.

### B. The First Administrative Hearing

#### 1. Hasanagic's Testimony

At the first administrative hearing, Hasanagic's attorney questioned Hasanagic about his functional limitations:

> Q:  . . . How long can you stand at one time?
> A:  The most that I can stand is 40 to 50 minutes.

---

[2] *See* Administrative Record at 498.

Q: And what happens after you've stood that long?

A: I have this sensation in my spine. It's a tingling sensation as if ants were crawling up my spine, and I have a sharp pain as if I was stabbed with a knife that is radiating down my [left] leg.

Q: Okay. And after you've, when you have that pain, what are you required to do? Are you required to sit or lie down or do something? Explain what you do after you've stood too long. . . .

A: If I stand for a longer period, for let's say 50 minutes, then I would have to lay down but if I stood for 30 or 40 minutes, all I had to do was sit down for 15 minutes, maybe even squat, just to rest a little bit. . . .

Q: How long can you sit at one time without having discomfort?

A: I can sit approximately 10 to 20 minutes. . . .

Q: Do you have any problems with walking, and how far can you walk?

A: I can't walk long, maybe 50 to 100 meters at the most.

Q: Do you have any problems with bending or kneeling?

A: Yes.

Q: What problems do you have, and what kinds of pain do you have as a result of that?

A: I have pain in my back and my leg.

(Administrative Record at 500-503.)

Hasanagic's lawyer also questioned Hasanagic regarding his ability to perform duties around the house such as shoveling snow, mowing the grass, and cleaning the house. Hasanagic responded that the woman he lives with has an eighteen year old daughter, and she performs such tasks. Specifically, Hasanagic stated that "I haven't being doing [those activities] since '97, and that's when I got injured at IBP."[3] Hasanagic's attorney also asked Hasanagic how he spent a typical day. Hasanagic responded that he drinks coffee, watches some television, and walks around the house.

---

[3] *See* Administrative Record at 504.

## 2.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Julie Svec with a hypothetical for an individual who is able to:

> work at a light or sedentary level of work such that they could pick up maybe 10 to 15 pounds on occasion otherwise it would be limited to 10 pounds or less frequently. The person should be able to sit a total of six hours out of an eight-hour work day, stand two to three, and walk one to two, and they would need a sit/stand option preferably. . . . And, further assume that they have unlimited ability to use their arms and hands, climb stairs occasionally, cannot climb ladders or work on scaffolds. They can balance occasionally, crouch occasionally, kneel and stoop occasionally, but they cannot crawl. . . . Limited communication skills primarily because of the language barrier in dealing with an English speaking country. Environmentally, they would have to avoid any concentrated exposure to hazards such as unprotected heights, fast or dangerous machines, and they would have to avoid concentrated exposure to high vibrations. . . . However, with appropriate pain medications, they can keep the pain level . . . at the mild level, and thus concentration would not generally be affected during a workday. And I'm going to alter the hypothetical to the extent on the sitting and standing that if they are given some discretion where they can take a break after an hour, for 10 to 15 minutes, they can stand for an hour, take a break 10 to 15 minutes, and then stand again for another hour, and given that opportunity, they would be able to stand a total of six hours out of an eight hour work day and probably sit about four.

(Administrative Record at 507-508.) The vocational expert testified that under such limitations, Hasanagic could perform his past work as a gambling dealer.

### C.    *The Second Administrative Hearing*

### 1.    *Hasanagic's Testimony*

At the second administrative hearing, Hasanagic's attorney asked Hasanagic whether his difficulties with pain would prevent him from working a full-time job. Hasanagic replied that "I could see myself working in a situation where I would be able to alternate

half an hour sitting, half an hour standing, half an hour walking and also with the help of medication."[4] Hasanagic further stated that the medication he takes causes him to be "sluggish" and "very tired." Hasanagic also testified that he did not do housework and could not do housework without help. Additionally, he asserted that he was restricted from lifting anything over two pounds.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is able to:

> work at a light or sedentary level of work such that they can pick up 10 to 15 pounds occasionally but less than 10 frequently, assume that the person can sit a total of six hours out of an eight-hour workday if given a sit/stand option in order to do work where they have some discretion to sit or stand or move around in their assigned work area, given that option they can probably also stand and walk two to three hours -- they'd need normal work breaks, unlimited use of hand controls but would be able to climb stairs only occasionally and they would not be qualified to work on ladders, scaffolds or ropes. In addition, they can balance, crouch, kneel, stoop occasionally but they cannot crawl. . . . They have communication limits in that they have some limitation in the ability to speak English on a consistent basis. Although they can understand a good deal of English. . . . Environmentally, they would have to avoid concentrated exposure to hazards such as unprotected heights, fast or dangerous machines as well as high vibrations. They have a degree of pain that would produce a moderate degree of pain noticeable to the person at all times. However, if they are given appropriate medications, they should be able to remain physically active at a sedentary up to some light levels of activities, but the pain level would be sufficient to cause moderate limitation in concentration, persistence, pace, moderately limited in the ability to maintain extended

---

[4] *See* Administrative Record at 475.

concentration, moderately limited in the ability to carry out
details.

(Administrative Record at 481-82.)   The vocational expert testified that under such
limitations, Hasanagic could not perform his past relevant work.  The vocational expert
further testified that Hasanagic could perform the following work: (1) document preparer
(34,000 positions in Iowa and 2,900,000 positions in the nation), (2) nut sorter (4,500
positions in Iowa and 495,000 positions in the nation), and (3) eyeglass frame polisher
(890 positions in Iowa and 98,000 positions in the nation).

### D. Hasanagic's Medical History

On August 25, 2000, Hasanagic was referred to Dr. James E. Crouse, M.D., for
evaluation of pain in his back and left leg.  Dr. Crouse noted that in 1997, Hasanagic was
injured after being hit by a forklift truck at work.  Hasanagic reported that since the
accident in 1997, he continued to have back pain and pain that radiated into his left leg.
According to Hasanagic, he has constant discomfort in his back and left leg which is worse
with activity.  Dr. Crouse further noted that Hasanagic took Ibuprofen and Vicodin for
pain relief.  Dr. Crouse reviewed x-rays and MRI testing of Hasanagic's low back.
Dr. Crouse found the lumbosacral spine x-rays to be normal.  The MRI showed bulging
discs at the fourth and fifth levels of the spine.  Dr. Crouse diagnosed Hasanagic with
lumbar disc disease with disc protrusion on the left with left radiculopathy at L5-S1.
Dr. Crouse recommended physical therapy and continued use of Ibuprofen as treatment.

On November 24, 2000, Dr. Thomas A. Cuevas reviewed Hasanagic's medical
records and provided Disability Determination Services ("DDS") with a physical residual
functional capacity ("RFC") assessment for Hasanagic.  Dr. Cuevas determined that
Hasanagic could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or
carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours
in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an
eight-hour workday, and (5) push and/or pull without limitations.  Dr. Cuevas also
determined that Hasanagic could occasionally climb, balance, stoop, kneel, crouch, and

9

crawl. Dr. Cuevas found no manipulative, visual, communicative, or environmental limitations. Dr. Cuevas concluded that:

> On the most recent MRI scan there is no evidence of nerve root or epidural impingement. In any event [Hasanagic] has persistent abnormal findings suggesting a radiculopathy. His condition has not progressed since his exam earlier in the year. There is no sign of muscle atrophy or gait disturbance. He is able to mow lawns and do light housework. His scan is consistent with [degenerative disc disease]. He has a severe impairment based upon his [degenerative disc disease]. He is capable of sustained work at the sedentary level.

(Administrative Record at 318.)

On August 9, 2001, Dr. J.D. Wilson, M.D., reviewed Hasanagic's medical records and provided DDS with a physical RFC assessment for Hasanagic. Dr. Wilson determined that Hasanagic could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Hasanagic could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. Dr. Wilson found no manipulative, visual, communicative, or environmental limitations. Dr. Wilson noted that:

> [Hasanagic's] credibility is eroded somewhat as he reports that he has pain in any one position for more than 15 minutes, yet reports that he spends most of his day in his room watching television. [Hasanagic's] credibility is also eroded due to the fact that, on 9/6/00, he indicated his pain has decreased and requested release to return to work without restrictions.

(Administrative Record at 323.)

On January 30, 2002, Hasanagic met with Dr. Nagakathnamma Nadipuram, M.D., for a disability physical. Dr. Nadipuram noted that Hasanagic could not sit or stand longer than ten to fifteen minutes at one time. Dr. Nadipuram also noted that Hasanagic had difficulty sleeping at night due to leg cramps. Upon examination, Dr. Nadipuram found

that Hasanagic had "significant pain in the back and he is unable to do [a] lot of flexion and extension in his back."[5] Dr. Nadipuram opined that Hasanagic:

> cannot carry more than 10 pounds and even if he carries he cannot bend and pick it up or put it down because of the stiff back. He cannot stoop, kneel or crawl. He cannot travel without taking a break every hour or so. . . . [H]is disability could be related to a lot of back pain, which is not enabling him to do the job.

(Administrative Record at 325.)

On March 1, 2002, Dr. Dennis A. Weis, M.D., reviewed Hasanagic's medical records and provided DDS with a physical RFC assessment for Hasanagic. Dr. Weis determined that Hasanagic could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Weis also determined that Hasanagic could occasionally climb stairs, balance, stoop, kneel, and crouch, but never crawl. Dr. Weis found no manipulative, visual, communicative, or environmental limitations. Dr. Weis concluded that:

> There are some inconsistencies that erode [Hasanagic's] credibility to a degree. He takes only Ibuprofen for his pain, but has had really no medical intervention since last review by this agency. . . . There are some inconsistencies between his stated limitations and actual [activities of daily living]. All evidence considered he would be capable of RFC as outlined.

(Administrative Record at 336.)

On August 18, 2003, Hasanagic met with Dr. Nadipuram for a second disability evaluation. Dr. Nadipuram noted that Hasanagic was unable to stand for more than one hour and unable to lift anything more than five pounds. Dr. Nadipuram further noted that Hasanagic "can walk about 200 meters and he gets the back pain. He can sit and drive for

---

[5] *See* Administrative Record at 325.

about 40 minutes, stands for a maximum of one hour then he gets the back pain rating 6-7/10."[6] Dr. Nadipuram also reported that Hasanagic is unable to "take up any kind of 8 hour jobs."[7] Upon examination, Dr. Nadipuram opined that:

> [Hasanagic] needs further evaluation with an orthopedic doctor and a complete back evaluation before his disability would be rated at this point. [Hasanagic] complains of significant pain radiating down to his left leg and unable to stand and do any kind of job for 8 hours and because of the pain history he cannot be hired and is unable to find a job.

(Administrative Record at 374.)

On October 3, 2003, Dr. Dennis A. Weis, M.D., reviewed Hasanagic's medical records and provided DDS with a physical RFC assessment for Hasanagic. Dr. Weis determined that Hasanagic could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Weis also determined that Hasanagic could occasionally climb stairs, balance, stoop, kneel, and crouch, but never crawl. Dr. Weis found no manipulative, visual, communicative, or environmental limitations. Dr. Weis concluded that:

> [Hasanagic's] allegations are to an extent consistent with evidence contained in the file. Eroding his credibility to a degree however is the fact that he's had minimal medical interventions in the interim since last evaluated by this agency. . . . All evidence considered [Hasanagic] should be capable of the RFC as outlined.

(Administrative Record at 386.)

On February 19, 2004, Hasanagic met with Dr. Heeyoune Jung, complaining of severe low back pain. Dr. Jung provided the following description of Hasanagic's pain:

---

[6] *See* Administrative Record at 374.

[7] *Id.*

> [Hasanagic] describes the pain as constant [low back pain]
> radiating to both legs and the posterior aspect of the thigh and
> leg and goes to the top of the foot more on the left than right.
> [Hasanagic] states that the pain is worse with sitting or
> standing for long periods of time and also has trouble with
> walking. He is not able to lift anything due to pain.
> [Hasanagic] has a sleep disturbance with the pain. Left leg
> pain is worse when he has more back pain but he can not
> specify any certain activities which can elicit pain down to his
> left leg.

(Administrative Record at 393.) Upon review of x-rays, Dr. Jung found spondylolisthesis of L4 and L5 of the spine. Dr. Jung diagnosed Hasanagic with chronic back pain and leg pain. Dr. Jung recommended medication and exercise as treatment. Dr. Jung also ordered an MRI of Hasanagic's spine. On March 23, 2004, Dr. Jung reviewed Hasanagic's MRI with Hasanagic. Dr. Jung found degenerative changes and dessication at the L4/5 and L5/S1 discs of the spine. Dr. Jung also found a paracentral disc herniation on L5/S1 and a small central disc herniation at L4/5. Dr. Jung diagnosed Hasanagic with chronic back pain, leg pain, and left S1 radiculopathy. Dr. Jung recommended medication as treatment. Dr. Jung also discussed steroid injections and surgery with Hasanagic, but Hasanagic decided to try medication before invasive treatment.

On April 21, 2004, Hasanagic met with Sara Douglas, A.R.N.P., ("Douglas"), seeking refills of his back pain medication and complaining of depression. Specifically, Hasanagic reported difficulty sleeping, trouble remembering things, difficulty concentrating, and feeling depressed. Douglas diagnosed Hasanagic with depression and chronic back pain. Douglas recommended medication as treatment.

On May 10, 2004, a doctor reviewed Hasanagic's medical records and provided DDS with a physical RFC assessment for Hasanagic.[8] The doctor determined that

---

[8] The signature of the doctor who provided DDS with the May 2004 residual function capacity assessment is illegible. Therefore, the Court will simply refer to him or her as "doctor."

Hasanagic could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, and (4) sit with normal breaks for less than six hours in an eight-hour workday. The doctor also determined that Hasanagic would need to periodically alternate sitting and standing to relieve pain and discomfort. The doctor found that Hasanagic would be limited in his lower extremities with the ability to push, pull, or use foot controls. The doctor also found that Hasanagic could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. The doctor further opined that Hasanagic would be limited in his ability to reach in all directions. The doctor found no visual or communicative limitations. The doctor determined that Hasanagic should avoid concentrated exposure to extreme cold and avoid all exposure to vibration. The doctor concluded that:

> [Hasanagic's] pain and limitation is [the] result of [an] herniated disc [and] related pain in [his] left leg. [His] back pain is mechanical [and] chronic. [His] symptoms could be relieved by injection/or surgery. [Hasanagic] has refused both at time of Clinic visit [on] 3/23/04.

(Administrative Record at 403.)

On February 27, 2006, Douglas filled out a questionnaire provided by Hasanagic's attorney. On the questionnaire, Douglas diagnosed Hasanagic with chronic low back pain, including disc bulge at L5-S1. Douglas opined that Hasanagic's problems with low back pain were consistent with a bulging disc and radicular symptoms. Douglas further opined that Hasanagic would "constantly" experience pain which would interfere with his attention and concentration. According to Douglas, Hasanagic's impairments would "not get better." In February 2007, Douglas filled out a similar questionnaire. The questionnaire was provided to her by Hasanagic's attorney. Douglas provided similar opinions on the questionnaire. Specifically, Douglas stated that with his pain, "everyday" was a "bad day" for Hasanagic. Douglas opined that Hasanagic's impairments would

prevent him from working eight hours per day, five days per week, without an unusual number of interruptions from his symptoms and impairments.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Hasanagic is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined

effect of all of his or her credible limitations. 20 C.F.R. § 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Hasanagic had not engaged in substantial gainful activity since May 31, 2003, except for the period of mid-October 2004 through at least October 2005.[9] At the second step, the ALJ concluded from the medical evidence that Hasanagic had the following severe combination of impairments: lumbosacral radiculopathy on the left with MRI evidence of a disc herniation at the L5-S1 level abutting the left S1 nerve root and a small disc herniation at L4-5 with chronic back and leg pain. At the third step, the ALJ found that Hasanagic did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Hasanagic's RFC as follows:

> [Hasanagic] has the residual functional capacity to perform light work except that he can lift less than 10 pounds frequently and 10 to 15 pounds occasionally. He can sit up to a total of six hours during an eight hour workday if given a sit/stand option with some discretion to sit, stand, and move around in the work area. With that sit/stand option, he can also stand and/or walk up to a total of two to three hours during an eight-hour workday. He can occasionally climb stairs but never work on ladders, scaffolds, or ropes. He can occasionally balance, crouch, kneel, and stoop. He cannot crawl. He is limited in speaking English on a consistent basis but can understand a good deal of English. He has problems

---

[9] The record demonstrates and Hasanagic testified that he was employed full-time as a dealer at casino from October 2004 through 2005. Specifically, the ALJ found that "[r]esults of an earnings query for the year 2005 reflect earnings of $20,880.33. These earnings are at the level indicating substantial gainful activity for the period mid October 2004 through at least October 2005." *See* Administrative Record at 21.

with English grammar when writing. He should avoid concentrated exposure to hazards such as unprotected heights and fast/dangerous machinery and high vibrations. He experiences a moderate degree of pain but with appropriate medication he can be active at the sedentary to light levels of physical exertion although he will be moderately limited in his ability to maintain attention, concentration, and pace, maintain extended concentration, and carry out details.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Hasanagic could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Hasanagic could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Hasanagic was not disabled.

## B. Objections Raised By Claimant

Hasanagic argues that the ALJ erred in four respects. First, Hasanagic argues that the ALJ erred in finding that his work as a casino dealer constituted substantial gainful activity without considering the special conditions under which the work was performed. Second, Hasanagic argues that the ALJ failed to properly weigh the opinions of Douglas, his primary health care provider. Third, Hasanagic argues that the ALJ failed to follow the proper procedures for evaluating his mental impairments. Lastly, Hasanagic argues that the ALJ failed to fully and fairly develop the record with regard to his work-related limitations and missing medical records.

### 1. Substantial Gainful Activity

Hasanagic argues that in determining that his work as a casino dealer from October 2004 to October 2005 constituted substantial gainful activity, the ALJ failed to consider "special conditions" which allowed him to perform that particular job.[10] Specifically, Hasanagic points out that as a casino dealer, he worked under the following "special

_____

[10] *See* 20 C.F.R. § 416.973(c)(2) (discussing special conditions which should be considered by an ALJ when making a determination on substantial gainful activity).

conditions:" (1) he worked a total of six hours in an eight-hour workday because casino dealers work for 40 minutes, and then take a 20 minute break continuously over an eight-hour period; (2) he was allowed to leave work early if the need arose; and (3) he was allowed additional short breaks if needed.[11] Therefore, Hasanagic maintains that "[t]he ALJ's decision should be reversed and this matter remanded for consideration of special conditions to rebut the presumption of substantial gainful activity for the time period from October 2004 to October 2005."[12]

20 C.F.R. § 416.973(c) describes work that is done under special conditions. Specifically, § 416.973 provides in pertinent part:

> . . . If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. . . . Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which --

---

[11] At the second administrative hearing, held on March 23, 2007, the ALJ and Hasanagic had the following exchange:

| ALJ: | How many hours a week did you work at the casino? |
|---|---|
| CLMT: | The goal was to work 40 hours a week. Sometimes I succeeded. Sometimes I didn't. |
| ALJ: | On average, what would he testify to in terms of the average amount of time he worked there per week? |
| CLMT: | On average, I worked about six hours a day, not -- and two hours I was on break. |
| ALJ: | Okay. And was that break that he was allowed, break time that he was allowed? |
| CLMT: | Yes. Those two hours were allowed, but even on top of that I would request little breaks and they would be allowed. |

*See* Administrative Record at 477-78.

[12] *See* Hasanagic's Brief (docket number 10) at 11.

18

(1)  You required and received special assistance from other employees in performing your work;

(2)  You were allowed to work irregular hours or take frequent rest periods;

(3)  You were provided with special equipment or were assigned work especially suited to your impairment;

(4)  You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;

(5)  You were permitted to work at a lower standard of productivity or efficiency than other employees; or

(6)  You were given the opportunity to work, despite your impairment, because of family relationship, past association with your employer, or your employer's concern for your welfare.

*Id.*

In his decision, the ALJ made the following finding regarding whether Hasanagic was gainfully employed during his alleged period of disability:

Earnings of $5,051.37 are reported for the year 2004. A[t] his first hearing on February 10, 2006, [Hasanagic] testified he worked full-time as a casino dealer from mid October 2004 through early November 2005 when he was fired due to a mistake he did not timely report. At his hearing on March 23, 2007, he testified to his work as a casino dealer ended due to his employer's determination he was cheating. Results of an earnings query for the year 2005 reflect earnings of $20,880.33.  These earnings are at the level indicating substantial gainful activity for the period mid October 2004 through at least October 2005.

(Administrative Record at 21.)

Having reviewed the entire record, including Hasanagic's testimony and earnings records, the Court finds no error in the ALJ's determination that Hasanagic engaged in substantial gainful employment from October 2004 to October 2005. Specifically, the Court concludes that factor number two--allowing an individual to work irregular hours or take frequent rest periods--of the six enumerated factors found in 20 C.F.R. § 416.973,

is the only factor remotely applicable to Hasanagic's position. Significantly, Hasanagic's work schedule as a casino dealer, 40 minutes of dealing followed by a 20 minute break, was not a "special condition," but rather the regular working schedule for a casino dealer. Similarly, the Court is unconvinced that an occasional extra break or occasional permission to leave work early constitutes a "special condition" related to Hasanagic's impairments. Accordingly, the ALJ's determination at at step-one of the five-step sequential analysis, that Hasanagic engaged in substantial gainful employment from October 2004 to October 2005, is supported by substantial evidence.

## 2. *Douglas' Opinions*

Hasanagic argues that the ALJ failed to properly evaluate the opinions of her a treating source, Douglas.[13] Specifically, Hasanagic argues that the ALJ's reasons for discounting Douglas' opinions are not supported by substantial evidence on the record. Hasanagic maintains that this matter should be reversed and remanded for further consideration of the opinions of Douglas.

Social Security Ruling 06-03p was issued on August 9, 2006 by the Social Security Administration ("SSA"). The purpose of the ruling was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). SSR 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, physician assistant, or licenced clinical social worker, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and

---

[13] As a nurse practitioner, Douglas is considered a medical source who is not an "acceptable medical source," such as a licensed physician or licensed psychologist. *See* Social Security Ruling 06-03p.

any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ thoroughly addressed and considered the opinions of Douglas. Specifically, the ALJ determined that:

> The undersigned does not give great weight to the opinion of Ms. Douglas, as it is inconsistent with [Hasanagic's] more than one year's work full-time as a gambling dealer which was full-time work, which required concentration according to vocational expert testimony, and from which [Hasanagic] allegedly left only 'at times' due to impaired concentration. Furthermore, [Douglas] acknowledges that some of her opinions are speculative in stating they are 'estimates.' Furthermore, neither her treatment records nor other evidence of record supports her opinion that pain constantly interferes with attention and concentration.
>
> Ms. Douglas completed a subsequent questionnaire for [Hasanagic's] attorney on March 14, 2007. In her answers to this questionnaire she again indicated [Hasanagic's] experience of pain would constantly interfere with his attention and concentration. She declined to answer whether or not [Hasanagic] required periods of walking around during an eight-hour work day. She also indicated [Hasanagic] would require only 10 minute unscheduled work breaks every two

> hours, although in her answers to an earlier questionnaire
> dated February 17, 2006 she estimated [Hasanagic] would
> require 10 to 15 minute unscheduled work breaks every hour
> during an eight hour work day. . . . For the same reasons
> discussed above, the undersigned does not give great weight to
> Ms. Douglas' answers regarding functional limitations in this
> subsequent questionnaire.

(Administrative Record at 25.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Douglas. The Court also finds that the ALJ provided "good reasons" for rejecting Douglas' opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Evaluation of Mental Impairments

Hasanagic argues that the ALJ failed to properly evaluate his mental impairments. Specifically, Hasanagic points out that:

> The record reflects [he] has been diagnosed with anxiety,
> depression, and a cognitive disorder. The ALJ failed to
> properly assess [his] mental impairments as the ALJ failed to
> follow the special technique prescribed by the Commissioner
> for evaluating mental impairments.

*See* Hasanagic's Brief (docket number 10) at 14. Hasanagic maintains that this matter should be remanded for further consideration of his mental impairments, including compliance with the special technique.[14]

---

[14] *See* 20 C.F.R. § 416.920a(a)-(e) (explaining the special technique and its procedures required for evaluation of mental impairments); *see also Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) ("Psychiatric review technique analysis is required to be conducted and documented at each level of the review process, including the ALJ level. The technique involves determination of whether there is a mental impairment followed (continued...)

Contrary to Hasanagic's position, the Commissioner argues that the ALJ was not required to apply the special technique because Hasanagic never claimed disability due to a mental impairment. Specifically, the Commissioner points out that: (1) neither Hasanagic, nor his counsel claimed a mental disorder as a severe impairment in Hasanagic's disability applications, or at either administrative hearing;[15] (2) even though Hasanagic received some mental health treatment in 2004, in the form of a prescription for antidepressant medication, such treatment alone does not demonstrate that he had a severe mental impairment;[16] and (3) Hasanagic's psychiatric examinations in December 2007 and January 2008 occurred after the ALJ filed his decision in August 2007, and therefore are not probative of Hasanagic's condition during the relevant time period.[17] The Court agrees with the Commissioner, and having reviewed the entire record, finds that Hasanagic did not allege any severe mental impairment. The Court further finds that the evidence in the record is insufficient to require the ALJ to have applied the special technique or require

---

[14](...continued)

by a rating of the degree of functional limitation resulting from the mental impairment. The technique must be conducted at all levels of the application process[.]") (citations omitted).

[15] *See Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) ("Although the ALJ must fairly and fully develop the record, he 'is not obligated "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability."') (citation and quotations omitted).

[16] *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (providing that being prescribed antidepressant drugs is not enough to require an ALJ to make further inquiry into a claimant's mental health status).

[17] *See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (Evidence produced after an ALJ's decision must "pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition.").

the ALJ to further inquire into the status of Hasanagic's mental health.[18]  *See Mouser,*
545 F.3d at 639; *Jones,* 122 F.3d at 1154.

### 4.    Fully and Fairly Developed Record

Hasanagic argues that the ALJ failed to fully and fairly develop the record because he did not request a consultative examination, including a statement of work-related limitations.  Hasanagic also argues that the ALJ failed to obtain missing medical records.  Hasanagic maintains that this matter should be remanded to further development of the medical record.

The Court will first address the issue of missing medical records.  Hasanagic claims that he saw Dr. Zdilar for depression in 2004, went to the People's Community Health Clinic at least five times between September 2006 and January 2007, and was evaluated at the University of Iowa Hospitals and Clinics in November 2006, but no such records are contained in the administrative record.  A case may be remanded for additional evidence "'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"  *Hepp v. Astrue,* 511 F.3d 798, 808 (8th Cir. 2008) (quoting 42 U.S.C. § 405(g)).  Here, Hasanagic offers no evidence as to the materiality of the alleged missing medical records or an explanation of good cause for why such evidence was not submitted to the ALJ before the administrative record was closed.  Significantly, Hasanagic was represented by an attorney and had two administrative hearings.  Hasanagic did not raise the issue of missing medical records at either hearing.  Moreover, his attorney never raised the issue when discussing the final administrative record at the hearings or in

---

[18]  The Court suggests that if, following the ALJ's decision, Hasanagic's mental health status deteriorated, the proper course of action may be to file a new application for benefits. *See Jones,* 122 F.3d at 1154 ("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits.").

correspondence with the ALJ following the hearings. Therefore, the Court finds that good cause does not exist for the failure to include any alleged missing medical records, whether such records are material or not, in the final administrative record. *See id.* ("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing a sufficient explanation.") (citing *Hinchey v. Shalala*, 29 F.3d 428, 433 (8th Cir. 1994)). Accordingly, the Court finds that Hasanagic's argument is without merit, and therefore, remand is unnecessary on the issue of alleged missing medical records.

Turning to Hasanagic's claim that the ALJ failed to properly develop the record with regard to ordering a consultative examination and statement of work-related limitations, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser*, 545 F.3d at 639.

Additionally, an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted). An ALJ should only contact a treating physician "if the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic

techniques.'" *Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). An ALJ may also order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). Additionally, 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ fully considered the consultative examination of Dr. Nadipuram, the opinions of Dr. Jung, including his determinations on Hasanagic's work-related limitations, the opinions of Douglas, and the opinions of three consultative doctors who provided DDS with physical RFC determinations. The Court finds such medical evidence adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Therefore, the ALJ did not err by not ordering a consultative examination and statement of work-related limitations for Hasanagic. *See Goff*, 421 F.3d at 791 (an ALJ should contact a treating physician for further information when "the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'") (quotation omitted); *Stormo*, 377 F.3d at 806 (an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped"); *Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her

26

constitute insufficient medical evidence to determine whether the claimant is disabled). Accordingly, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

## VI. CONCLUSION

The Court finds that the ALJ properly determined that Hasanagic engaged in substantial gainful employment from October 2004 to October 2005. The Court further finds that the ALJ properly evaluated the opinions of Douglas, considered and addressed the medical opinion evidence in the record, and fully and fairly developed the record as to the medical evidence. The Court also finds that the evidence in the record is insufficient to require the ALJ to have applied the special technique or require the ALJ to further inquire into the status of Hasanagic's mental health. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.   The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.   Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.   The Clerk of Court is directed to enter judgment accordingly.

DATED this _6th_ day of December, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA